**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOSHUA NEUMAN, JESSICA
KELLEY, BOBBY KELLEY, and
RONALD K. BUCKMAN III on
behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.

LULULEMON USA INC., a Nevada
corporation,

    Defendant.

Case No.
Hon.

---

**CLASS ACTION COMPLAINT**

Plaintiffs, by their attorneys, state as follows:

**INTRODUCTION**

1.     This class action arises from Lululemon USA Inc.'s retention of windfall profits generated by the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq. This windfall is a direct result of Lululemon systematically passing on the costs of IEEPA tariffs to its own customers.

2.     This particular dispute stems from a structural inequity in the tariff refund process. While the importer of record is the only party that may recover a refund from the government for an improperly assessed tariff, the importer is often

nothing more than a pass-through vehicle. Frequently, the importer simply fronts the cost of the tariff and is made whole by imposing higher prices on consumers. The consumer, for all intents and purposes, pays the tariff.

3.     And yet, those consumers—the truly injured parties—possess no direct avenue for redress, even when the Supreme Court strikes down the tariff as unlawful. The consumers who bore the economic burden of these tariffs possess no statutory cause of action in the Court of International Trade ("CIT"); only the importer of record has standing to seek a refund, regardless of who ultimately paid the tax. Large corporations, even those who passed 100% (or more) of the tariff burden onto customers, remain fully empowered to recover a complete refund for any unlawful tariffs they paid.

4.     This is not hypothetical. Thousands of companies—including Lululemon—have filed lawsuits in the CIT actively seeking refunds for every cent of the IEEPA tariffs they paid. If they succeed, they will have no obligation to return money to their customers under federal trade law, despite estimates that U.S. consumers shouldered two-thirds of the tariff burden.

5.     This lawsuit seeks to prevent Lululemon, one of the world's largest yoga wear and sportswear companies, from double recovery. Lululemon has made no commitment to return any portion of its anticipated tariff refunds to the consumers who ultimately bore those costs. Lululemon's simultaneous recoupment

of tariff costs from consumers through elevated pricing and from the government through court-ordered tariff refunds constitutes unjust enrichment at the expense of Plaintiffs and a proposed class of similarly situated Lululemon customers.

6.     Therefore, Plaintiff seeks a judgment that Lululemon is obligated to return to Plaintiffs and the Class all IEEPA duties passed on to customers in the form of higher prices on products, with interest.

7.     Plaintiffs and the Class are entitled to restitution of the tariff overcharges they paid, or a proportionate share of any tariff refunds Lululemon recovers, together with interest, reasonable attorneys' fees, and costs.

## PARTIES

8.     Plaintiff Joshua Neuman is a resident of this district and is a consumer of Lululemon products. Within the relevant period, Mr. Neuman purchased clothing from Lululemon subject to IEEPA tariffs, at prices inflated by Lululemon's pass-through of IEEPA tariff costs.

9.     Plaintiff Jessica Kelley is a resident of this district and is a consumer of Lululemon products. Within the relevant period, Ms. Kelley purchased clothing from Lululemon subject to IEEPA tariffs, at prices inflated by Lululemon's pass-through of IEEPA tariff costs.

10.     Plaintiff Bobby Kelley is a resident of this district and is a consumer of Lululemon products. Within the relevant period, Mr. Kelley purchased clothing from

Lululemon subject to IEEPA tariffs, at prices inflated by Lululemon's pass-through of IEEPA tariff costs.

11.     Plaintiff Ronald K. Buckman III is a resident of this district and is a consumer of Lululemon products. Within the relevant period, Mr. Buckman purchased clothing from Lululemon subject to IEEPA tariffs, at prices inflated by Lululemon's pass-through of IEEPA tariff costs.

12.     Defendant Lululemon USA Inc. ("Lululemon") is a Nevada corporation that conducts and is registered to do business in this district.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the proposed Class contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and all named plaintiffs and at least one proposed Class Member are citizens of a state different from Defendant.

14.     This Court has personal jurisdiction over Lululemon because it conducts continuous business in the state of Missouri, including the operation of at least eight stores across the state.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiffs reside in this District, and a substantial portion of the events giving rise to this action occurred in this District, including Plaintiffs' purchases of tariffed goods at a Lululemon stores in Michigan or purchased online and shipped to Michigan.

## NATURE OF THE ACTION

**I.    Lululemon's business.**

16.    Lululemon was founded in 1998 in Vancouver, British Columbia, as a retailer of yoga pants and other yoga wear.

17.    Lululemon has since expanded its offerings from yoga wear to other products including shoes, lifestyle apparel, sportswear, personal care products, and accessories.

18.    Lululemon has been a massive success and is currently one of the largest yoga wear and sportswear brands in the world, with over 750 locations, tens of thousands of employees, and billions in annual revenues.

**II.    The IEEPA tariffs and Lululemon's corresponding price hikes.**

19.    Beginning in February 2025, President Trump issued a series of executive orders to impose tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. Each executive order was premised on IEEPA authorization of the tariffs.  President Trump claimed that these tariffs were justified under IEEPA because of a purported national emergency.

20.    Under the authority of IEEPA, President Trump imposed tariffs of 25% on most imports from Canada and Mexico, tariffs as high as 145% from China, and a baseline 10% tariff on nearly all imports to the United States.

5

21.     Throughout the relevant period, Lululemon paid IEEPA tariffs to U.S. Customs and Border Protection ("CBP"). The IEEPA tariffs had a substantial impact on Lululemon, which imports a majority of its products from tariffed countries, including China. It is estimated that Lululemon paid around $240 million in IEEPA tariffs.

22.     Lululemon CFO Meghan Frank announced in June 2025 that Lululemon would increase prices in response to the tariffs.

23.     Lululemon CEO confirmed this in September 2025 in an interview with CNBC.

24.     On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs.  *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 646 (2026).

25.     President Trump subsequently issued an Executive Order terminating the IEEPA tariffs.

26.     On February 22, 2026, CBP issued CSMS #67834313, announcing that it will halt collection of all tariffs imposed pursuant to IEEPA. The termination of IEEPA tariffs took effect at 12:00 a.m. ET on February 24, 2026.

27.     The higher prices consumers paid were a consequence of Lululemon's increased cost of importation. Absent the imposition of the unlawful IEEPA tariffs, Lululemon would not have needed to raise prices on consumers in this way.

28.     As a direct result of Lululemon's tariff pass-through pricing, Plaintiffs

and Class Members paid more for tariffed goods than they would have paid absent the unlawful IEEPA tariffs.

**III.    Lululemon's CIT lawsuit and anticipated tariff refunds.**

29.    On January 8, 2026, Lululemon filed a complaint in the United States Court of International Trade. *Lululemon USA Inc. v. United States et al.*, No. 1:26 cv 00465 (Ct. Int'l Trade Jan. 8, 2026). In this complaint, Lululemon sought, among other things, a declaratory judgment that the IEEPA tariff orders are unlawful, an injunction against the collection of the IEEPA tariffs from Lululemon, and an order requiring a refund of the IEEPA tariff duties Lululemon already paid.

30.    On December 23, 2025, the Court of International Trade issued Administrative Order 25-02 staying all IEEPA tariff cases pending the Supreme Court's resolution of the IEEPA tariffs.

31.    In the wake of the Supreme Court's decision in Learning Resources, Lululemon and nearly 2,000 other importers are attempting to recover tariff refunds from the government. They appear likely to succeed. On March 4, 2026, the Court of International Trade ordered refunds of IEEPA tariffs, holding that "[a]ll importers of record" are "entitled to the benefit" of the Supreme Court ruling that struck down the IEEPA tariffs. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21. The Court ordered CBP to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to IEEPA

7

duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *Id*. at 2–3.

32.     According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at 6. Lululemon, as one of the country's largest sportswear importers, is entitled to hundreds of millions in refunds.

33.     This presents an obvious problem. Although Lululemon will recover tariff refunds on the tariffed goods it sold, its customers bore the economic brunt of these tariffs by paying higher prices Lululemon admittedly set because of the IEEPA tariffs. The risk of Lululemon obtaining double recovery is therefore imminent.

34.     Lululemon is poised to be paid twice for the same unlawful tariff burden: once by its customers (through elevated prices) and once by the U.S. government (through tariff refunds).

35.     Despite admitting to having raised prices in response to the IEEPA tariffs, Lululemon has not committed to returning any tariff refunds it receives to the parties that ultimately paid them: Lululemon's customers.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4) on behalf

of the following proposed Class:

> Proposed Class: All persons in the United States that purchased, from any Lululemon retail channel, any good subject to the tariffs imposed under IEEPA, during the period February 1, 2025 through February 24, 2026.

37.    Excluded from the Class are: (a) Defendant; (b) subsidiaries and affiliates of Defendant; (c) parent companies of Defendant; (d) any person or entity who is an officer, director, employee, or controlling person of Defendant; (e) any entity in which Defendant has a controlling interest; (f) the legal representatives, heirs, successors, and assigns of any excluded party; and (g) any judicial officer presiding over this action, the members of his or her immediate family and staff, and any juror assigned to this action.

38.    *Numerosity*. The Members of the Class are so numerous that joinder of all Members is impracticable. Lululemon operates 374 locations in the United States (as of February 2, 2025), in addition to online sales, serving tens of millions of customers. Lululemon sells millions of products each month, and upon information and belief, there are tens of millions of people in the proposed Class.

39.    *Typicality*. Plaintiffs' claims are typical of the claims of the Members of the Class. Throughout the Class Period, each Plaintiff purchased from Lululemon clothing products imported from countries subject to IEEPA tariffs, at prices inflated by Lululemon's pass-through of IEEPA tariff costs. Plaintiffs' claims are also typical of the other Class Members in that Plaintiffs have been damaged as a result of paying

9

an unfairly elevated price to Lululemon.

40.     *Adequacy*. Plaintiffs will fairly and adequately protect the interests of the putative Class and have retained counsel competent and experienced in class action litigation. Plaintiffs are committed to the vigorous prosecution of this action and have no interests that are adverse or antagonistic to the Class.

41.     *Superiority*. A class action is superior to any other available means for the fair and efficient adjudication of the Class's claims. The damages suffered by certain individual Members of the Class are relatively small compared to the burden of individual prosecution of the complex litigation required to recover from Lululemon. It would be impractical for most, if not all, Class Members to seek relief on an individual basis. Furthermore, individual litigation could result in thousands of individual lawsuits, introducing the risk of inconsistent judgments and increasing the delay and expense to all parties. In contrast, a class action would present far fewer administrative difficulties.  The Members of the Class are ascertainable through methods typical of class action practice and procedure, including through Lululemon's own records.

42.     *Predominance of Common Questions of Law and Fact*. Numerous questions of law and fact are common to Plaintiff and all Members of the Class. These common questions will result in common answers for all Class Members that will impact the resolution of the claims on grounds equally applicable to all Class

Members. These common questions, which predominate over any questions affecting only individual Class Members, include, but are not limited to:

a. Whether the higher prices that consumers paid for Lululemon's products are attributable to the cost of IEEPA tariffs;

b. Whether Lululemon is obligated to return IEEPA duties to the consumers who paid them in the form of higher prices;

c. Whether Lululemon's retention of elevated consumer payments constitutes unjust enrichment;

d. Whether Lululemon's conduct has harmed Plaintiffs and the Class uniformly;

e. The measure of damages available to Plaintiffs and the Class due to increased prices caused by Lululemon's tariff pass-through; and

f. Whether restitution is the appropriate measure of relief, and if so, the appropriate amount.

43. *Rule 23(b)(2) Class Certification*. Lululemon has acted in a manner that applies generally to the proposed Class, making both declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Lululemon's decision to raise prices on goods subject to IEEPA duties and then seek a blanket refund from the government without committing to establish any customer refund mechanism warrants class-wide declaratory and injunctive relief.

## COUNT I
## QUASI CONTRACT/UNJUST ENRICHMENT

44.     Plaintiffs incorporate the foregoing allegations in this complaint as if fully set forth herein.

45.     Plaintiffs and the Class conferred a benefit upon Lululemon in the form of the inflated prices they have paid on a wide array of good subject to the IEEPA tariffs.  These inflated prices were caused by Lululemon's attempt to pass the costs of the IEEPA tariffs.

46.     Lululemon is now in the process of recovering from the government the same tariff costs it collected from its customers. Lululemon has already been enriched by the inflated prices paid by Plaintiffs and the Class, and its recovery of the same tariff costs from the government compounds that enrichment.

47.     Under the circumstances detailed in this Complaint, equity requires that Lululemon pay Plaintiffs and the Class any IEEPA tariff costs passed through to customers, the amount of which will be proven at trial.

## COUNT II
## MONEY HAD AND RECEIVED

48.     Plaintiffs incorporate the foregoing allegation in this complaint as if fully set forth herein.

49.     Lululemon received money from Plaintiffs and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-

12

through of IEEPA tariff costs.

50.     Lululemon received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

51.     The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization.

52.     The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiffs and to each Member of the proposed Class.

53.     Defendant has not returned the money.

54.     In equity and good conscience, Lululemon should not be permitted to retain the funds consumers paid above and beyond what they would have absent the IEEPA tariffs. The money belongs to Plaintiffs and the Class, and Lululemon is obligated to return it.

55.     This Count is pleaded in the alternative to Count I. While Count I (Unjust Enrichment) addresses the inequity of Lululemon's retention of consumer overcharges already collected, this Count more particularly addresses Lululemon's receipt and anticipated retention of government refund proceeds that, in equity, represent a return of money that was economically borne by Plaintiffs and Members of the Class, not by Lululemon.

## PRAYER FOR RELIEF

Plaintiffs request that the Court provide the following relief:

56. Determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23 and direct that notice of this action be given to Members of the Class;

57. Enter an order declaring that Lululemon's actions violate the equitable principles underlying claims for unjust enrichment and money had and received;

58. Award Plaintiff and the Class damages or restitution in the amount to be determined at trial that Lululemon was unjustly enriched by the tariff-cost component of prices charged to Class Members;

59. Enter a declaration that Lululemon is obligated to return to Plaintiff and proposed Class Members all IEEPA duties passed on to customers in the form of higher prices on products, with interest;

60. Award prejudgment and post-judgment interest;

61. Award Plaintiffs reasonable attorneys' fees and costs; and

62. Grant such other equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

63. In accordance with Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

14

Respectfully submitted,

*/s/Gerard V. Mantese*
**MANTESE HONIGMAN, P.C.**
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Kathryn Regan Eisenstein (P66371)
keisenstein@manteselaw.com
Brian P. Markham (P85085)
bmarkham@manteselaw.com
1361 E. Big Beaver Rd.
Troy, MI 48083
(248) 457-9200

Dated: March 27, 2026                    *Attorneys for Plaintiffs*

15